Brewster, J.
The claim of the executrix-respondent arises from an unusual state of facts, which, as undisputed, may he epitomized as follows: appellant executor’s testate, Lizzie S. Fisher, was a cousin of the late J. Sheldon Frost, once a well known lawyer in Albany. She lived twenty-five miles away in the hamlet of Quaker Street, in Schenectady County. She was miserly and lived meagerly. She had considerable wealth, leaving a gross estate valued at $147,582.71, $75,000 of which was in savings bank deposits. For many years and until he died, Mr. Frost had advised and assisted her in many of her property and other personal affairs, as an attorney and as a friend, agent, and relative.
Mr. Frost died May 12,1932, and Lizzie S. Fisher died May 13, 1940. On August 22, 1923, she assigned to him a certain bond and mortgage which she owned. It is called the Bushmore mortgage. It was on a farm and secured payment of $2,000. *511 The assignment was recorded about three years after it was made and two days before that Mr. Frost executed and delivered to the assignor a written instrument which recited the assignment and concluded by stating that in consideration thereof he agreed to pay the assignor $120 annually during the balance of her life * * and in case further moneys are need (sic) by her for her personal use to pay to her from time to time sue]], part of the principal sum of said mortgage as she may require. ’ ’ From the time of the assignment Mr. Frost paid Mrs. Fisher the equivalent of the interest on the mortgage until his death and up to November 1,1932.
Further undisputed facts are as follows: Mr. Frost’s estate was found to be insolvent and on May 2,1933, Mrs. Fisher made a written demand on his executrix for the return of the Bush-more bond and mortgage, stating she was “ in need ” thereof, “ and the moneys represented thereby ”, and that her demand was “ made pursuant to my understanding of the agreement between myself and J. Sheldon Frost, wherein and whereby he became possessed of said bond and mortgage.” (Italics supplied.) Fourteen days later Mrs. Frost, the executrix, complied with the demand and in doing so relied on Mrs. Fisher’s statement that she was in need of what she had demanded.
After Mrs. Frost’s compliance with the demand the evidence is she learned that Mrs. Fisher had upwards of $35,000 in savings bank accounts. Thereafter some three years elapsed when in 1936, Mrs. Frost demanded the return of the Bushmore mortgage or its cash equivalent, upon the ground that when she had reassigned it the latter was “ not in need ” thereof. Mrs. Fisher refused to comply for over three and one-half years when she died; seven months after Mrs. Fisher’s death, the claim in question was presented to her executor, the appellant, who rejected it.
The cause of action set forth in the respondent’s claim is grounded in fraud in that it asserts that Mrs. Fisher fraudulently obtained repossession of the mortgage in that she represented and stated that she was in need thereof when she was not, because she then had other wealth, available and ample for her “ needs Whether in view of the relevant proofs this amounts to a valid cause of action for fraud is the question before us.
The question points to the agreement which Mr. Frost executed to Mrs. Fisher. It’s a rather curious one. It is vague and indefinite and lacks completeness as regards any clear statement of the finality of the arrangement, and the ultimate rights of the parties. It merely recites that, in consideration of the assignment to him, Mr. Frost agreed to pay the assignor the *512 money equivalent of the then income from what was assigned as long as the assignee lived, and also such part of the principal as from time to time she might require to he paid in case she needed further moneys for her personal use.
Presumably Mr. Frost drew the assignment and, just before he recorded it, also his agreement. Since he was a lawyer, acting on behalf of himself and also his apparently somewhat eccentric cousin, and because of his long standing relations with her and her affairs, we may not construe the agreement very strictly against her, the assignor. In consequence I think we must say that the loose and general expression as to Mr. Frost’s obligation to comply with Mrs. Fisher’s requirement for payment of such part of the principal of said mortgage as was needed by her for her personal use — that as to that, Mrs. Fisher was alone to adjudge when it could be called. (Matter of Woollard, 295 N. Y. 390.) A need of money for personal use is a phrase of widest scope in meaning. As used here I do not think we may restrict it to the concept of want for means of sustenance or subsistence. If, then, we may not so restrict it, how else may we limit its meaning? As generally understood, in a loose employment of the expression, one may have need for the use of money for a personal use in as many ways as may be pointed out by a reasonably exercised imagination. In a wide sense any use which one personally makes of one’s money is a personal use. Even philanthropy may involve a personal use of one’s funds, and an intent to do charity create a need for money.
Respondent’s only claim, in effect, is that the late Mrs. Fisher worked a fraud upon the estate of Mr. Frost when she demanded and received the reassignment of the Rushmore mortgage. No other cause of action was alleged or litigated. As to that .the burden of proof was upon the claimant. I think it must be said that the facts aforesaid failed to sustain that burden and that in her accomplishment of the return of the Rushmore mortgage Mrs. Fisher acted within her rights and practiced no deception. She acted within the wide scope of the agreement in sensing and declaring the need she felt for the return of the security for her personal use.
Dealing with the acts and written words of two persons now deceased makes it hazardous to erect hypotheses as to their unexpressed intentions. However it may be observed that if Mr. Frost, continuing the performance of his part of the agreement, had outlived Mrs. Fisher and she had not requisitioned his payment of the principal of the mortgage or all of it, he probably stood to gain the remainder. That Mrs. Fisher’s assignment *513 was a gift so intended seems evident. Such being so, it would seem that Mr. Frost’s death worked a frustration as regards a completion of whatever kind of a gift was intended and arrived at in the vaguely phrased agreement which Mr. Frost composed.
The parts of the decree appealed from should he reversed and the claim dismissed.
The portions of the decree under appeal are reversed on the law and on the facts, and the claim of claimant-respondent is disallowed and dismissed, without costs.
Heeeernan, Deyo, Santey and Bergan, JJ., concur.
The portions of the decree under appeal are reversed, on the law and the facts, and the claim of claimant-respondent is disallowed and dismissed, without costs.